IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
ALBANY DIVISION

| | |
|---|---|
| DAVID E. SWANSON, individually, and as Personal Representative of the Estate of EDNA M. BAKER-VEST, deceased, and JULIA K. STRICKLAND, DARRYL R. SWANSON, and DOUGLAS SWANSON, individually<br><br>Plaintiffs,<br><br>v.<br><br>FORD MOTOR COMPANY, TRW VEHICLE SAFETY SYSTEMS, INC., and TRW AUTOMOTIVE HOLDING CORP.<br><br>Defendants. | *<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>*<br>* |

Civil Action No. 1:04-CV-86-2(WLS)

## COMPLAINT FOR DAMAGES

COME NOW YOUR PLAINTIFFS and bring their Complaint for Damages against Defendants named above, showing the Court as follows:

### NATURE OF THE ACTION

1.  This is an action for damages wrongful death and personal injuries. The claims arise out of the design, selection of components, inspection, testing, manufacture, assembly, equipping, marketing, distribution and sale of an uncrashworthy, defective, and unreasonably dangerous motor vehicle, as well as negligent operation of a motor vehicle.

### PARTIES, JURSIDICTION AND VENUE

2.  EDNA M. BAKER-VEST (the "Decedent") was a resident of the City of Lecanto, Citrus County, Florida, when she died on July 1, 2002.



3. Plaintiff David E. Swanson is the natural child of the Decedent. He is also the duly appointed, qualified and acting Personal Representative of the Estate of the Decedent by virtue of orders and letters issued by the Circuit Court of the Fifth Judicial Circuit for Citrus County, Florida. Plaintiff David E. Swanson is a resident of the City of Crystal River, Citrus County, State of Florida.

4. Plaintiff Julia K. Strickland is the natural child of the Decedent, and is a resident of Franklin, North Carolina.

5. Plaintiff Darryl R. Swanson is a natural child of the Decedent, and is a resident of Lakeland, Florida.

6. Plaintiff Douglas Swanson is a natural child of the Decedent, and is a resident of Orlando, Florida.

7. The Decedent has no natural or adopted children other than David E. Swanson, Julia K. Strickland, Darryl R. Swanson, and Douglas Swanson (collectively "Decedent's Children").

8. James E. Vest is the legal spouse the Decedent. Prior to her death the Decedent and James E. Vest were estranged.

9. His last known address was 702 North Palm Ave., Howey In The Hills (Lake County), Florida 34737. His present whereabouts are unknown.

10. James E. Vest has refused to respond to the Decedent's Children's attempts to contact him, he has refused to reveal his present location, and he has refused, and continues to refuse, to file, or to participate in filing, a claim for the wrongful death of the Decedent. He has thereby failed to fulfill his duty to the Decedent's Children to

bring an action to recover for the wrongful death of the Decedent created in him by the Georgia Wrongful Death Statute, O.C.G.A. § 51-4-1, *et seq*.

11. Therefore, the Decedent's Children are entitled to prosecute this action to assert the claim for Decedent's wrongful death. *See Emory University v. Dorsey*, 207 Ga. App. 808, 809-10, 429 S.E. 2d 307, 809-10 (1993).

12. Defendant Ford Motor Company (Ford) is a Delaware corporation authorized to do business in this state and district. Ford has a registered agent in this state, Corporation Process Company, 180 Cherokee Street, N.E., Marietta, Cobb County, Georgia 30060, upon whom the Summons and Complaint may be served.

13. Defendant TRW Vehicle Safety Systems, Inc. (TRW Systems) is a Delaware corporation. TRW Systems is authorized to do business, and doing business, in this state and district. Defendant TRW Systems has a registered agent in this state, CT Corporation System, 1201 Peachtree Street, N.E., Atlanta, Fulton County, Georgia 30361, upon whom the Summons and Complaint may be served.

14. TRW Systems is a consolidated subsidiary of TRW Automotive Holding Corporation, which among other things, manufactures, distributes and sells occupant restraint safety systems.

15. Defendant TRW Systems acting for and on behalf of its parent corporation, TRW Automotive Holding Corporation (TRW Automotive), manufactures, distributes and sells automotive components installed in motor vehicles manufactured and assembled by Ford and sold by Ford in the State of Georgia, including components of the automobile which is the subject of this action.

16. Defendant TRW Automotive is Delaware corporation. Defendant TRW Automotive is a successor to TRW, Inc. TRW Automotive became a distinct entity from TRW, Inc., on February 28, 2003 when the Blackstone Group acquired from the Northrop Grumman Corporation a majority interest in the subsidiaries of TRW, Inc. engaged in the automotive business. The Northrop Grumman Corporation acquired TRW, Inc. on December 11, 2002.

17. Defendant TRW Automotive in person or through its agents, regularly does and solicits business in this state.

18. Defendant TRW Automotive derives substantial revenues from its products sold, used or consumed in this state.

19. Defendant TRW Automotive, in person and through agents, otherwise engages in a persistent course of conduct directed towards this state and avails itself of the benefits of the laws of this state so that subjecting it to jurisdiction here is consistent with due process.

20. Defendant TRW Automotive is subject to the jurisdiction of this Court since it, its agents, or its employees have committed tortious acts or omissions inside or outside this state which have resulted in tortious injuries in this state, as more fully set forth herein.

21. Defendant TRW Automotive and TRW Systems, are the manufacturers of automotive components installed in motor vehicles manufactured and assembled by Ford and sold by Ford in the State of Georgia, including components of the automobile which is the subject of this action.

22. TRW Automotive may be served with a copy of the summons and complaint by delivering same to its President and CEO, John C. Plant, at its world headquarters 12025 Tech Center Drive, Livonia, Michigan 48150.

23. All Defendants are joint and severally liable to all Plaintiffs for damages proximately caused by the tortious acts alleged in this Complaint.

24. The court has jurisdiction of this matter based on diversity of citizenship under 28 U.S.C. § 1332, in that the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

25. Venue properly lies in this district and division pursuant to the provisions of 28 U.S.C. § 1391 because a substantial portion of the transactions, acts, omissions, and occurrences forming the basis of this action occurred in this district.

## THE PRODUCT

26. The defective product giving rise to this action is a 1997 Ford Explorer VIN 1FMZU73E1YUB81640 (the "Explorer"), owned by the Decedent, and in particular, occupant restraint system installed in said Explorer.

## THE COLLISION

27. The incident out of which this action arises is a two-vehicle collision that occurred on or about July 1, 2002, at approximately 12:51 p.m., on Interstate Highway 75 (I-75) approximately 50 feet north of the Georgia State Route 33 connector.

28. Decedent was traveling southbound on I-75 in the far right lane through a construction zone in the Explorer when she lost control of the Explorer, hitting both the concrete wall to her right and a vehicle traveling in the southbound lane to her left. She

made an overcorrecting steering maneuver in an attempt to regain control, which resulted in the Explorer overturning and rolling several times for approximately 210 feet.

## THE EXPLORER

29. Defendant Ford designed, selected components for, inspected, tested, manufactured, assembled, equipped, marketed, distributed, and sold the Explorer and similar vehicles.

30. Defendant TRW Automotive or TRW Systems manufactured the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

31. Defendants Ford, TRW Automotive, TRW Systems, or some of them, designed the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

32. Defendants Ford, TRW Automotive, TRW Systems, or some of them tested the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

33. Ford selected the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

34. TRW Automotive or TRW Systems marketed, distributed and sold the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

35. Defendants Ford, TRW Automotive, TRW Systems or some of them inspected the occupant restraint system and components, including the seat belt buckles that were installed in the Explorer and similar vehicles.

36. Ford marketed, sold, and delivered the Explorer to automobile dealers for ultimate resale to the Decedent.

37. Except for reasonably foreseeable, ordinary wear and tear, there was no change in the condition of the Explorer, or its restraint system components, including the seat belt buckles, from the time the Explorer left Ford's control until the occurrence of the incident giving rise to this action.

38. Defendants Ford, TRW Automotive, TRW Systems or some of them had a legal duty to design, inspect, test, manufacture, assemble, equip, market, distribute and sell the vehicles or components they sold so that the vehicles or components would be merchantable, reasonably safe, fit for the use intended, and would not malfunction or fail under foreseeable collision conditions that might occur in the course of their expected use.

39. Defendants Ford, TRW Automotive, TRW Systems or some of them had a legal duty to design, inspect, test, manufacture, assemble, equip, market, distribute and sell the vehicles or components they sold so the vehicles or components would be reasonably crashworthy and provide a reasonable degree of occupant protection during foreseeable collisions that might occur in the course of their expected use.

40. The federal government, through the National Highway Transportation Safety Administration (NHTSA), has promulgated certain mandatory safety regulations concerning automobiles, including seat belt buckles. Under mandate of federal law, automobile manufacturers, like Ford, are prohibited from selling vehicles that do not comply with the safety standards promulgated by NHTSA. 49 U.S.C.A. § 30112.

41. Ford vehicles that are equipped with occupant restraint systems and components, including seat belt buckles, that are the same, or similar, to those that were installed in the Explorer and similar vehicles, do not comply with NHTSA standards because the said occupant restraint systems and components are not in compliance with federal regulations. *See* 49 C.F.R. § 571.209 S4.1(e) ("The buckle release mechanism shall be designed to minimize the possibility of accidental release").

42. Automobile occupants have a significant expectation that occupant restraint systems will function safely and reliably. Seat belts are at the core of a vehicle's occupant restrain system, and the seat belt buckle is an integral part of the seat belt. When a person buckles-in and hears the reassuring click that his or her seat belt is fastened, he or she reasonably expects that the seat belt buckle will not accidentally release at any time, and especially in the event of a collision.

43. Ford capitalizes on its vehicles' safety features in its sales and promotional efforts, representing that its vehicles' occupant restraint systems are safe and adequate.

44. Ford advertised, marketed, distributed and sold the Explorer, and similar vehicles, as safe passenger vehicles intended to be used primarily for personal transportation.

45. In advertising and promotional materials, Ford has represented that Ford vehicles and their components, including the Explorer and the occupant restraint system with which it was equipped, are safe, quality vehicles that meet all applicable safety standards.

46. The stickers or plates on all Ford vehicles, including the Explorer, represent that the vehicle conforms to all applicable federal motor vehicle safety standards in effect.

47. The label stitched onto the webbing of the occupant restraint systems in the Explorer represents that the occupant restraint system conforms to all applicable federal motor vehicle safety standards in effect.

48. The audible "click" created when the seat belt buckles installed in Explorer were fastened, constitutes a representation that the buckle is indeed properly secured and will not release accidentally. This representation is false as the seat belt buckle installed in the Explorer is of a type that is prone to accidental release.

49. Through the sale of Ford vehicles and their components, including the Explorer and the occupant restraint system, including seat belt buckles, with which it was equipped, each, or some, of the Defendants Ford, TRW Automotive, and TRW Systems was a "seller" of the occupant restraint system, including the seat belt buckles with which the Explorer was equipped, pursuant to the Georgia Uniform Commercial Code (GUCC), O.C.G.A. § 11-2-313.

50. Pursuant to O.C.G.A. § 11-2-313, the representations made by Defendants Ford, TRW Automotive, TRW Systems or some of them, (1) in marketing the Explorer, its components, and similar vehicles, as safe passenger vehicles intended to be used primarily for personal transportation, (2) through stickers, plates, and other labels representing that the vehicle and its components conformed to all applicable motor vehicle safety standards in effect, and (3) through the audible "click" created when a the type of buckle installed in the Explorer is fastened, create an express warranty that the

Explorer, and similar vehicles, and the seat belt buckles with which it and similar vehicles were equipped, were in fact safe family passenger vehicles conforming to all applicable safety standards that could in fact be used primarily for personal transportation.

51. Defendants Ford, TRW Automotive, TRW Systems or some of them knew, or should have known, that their representations that the type of seat belt buckle installed in the Explorer met all applicable safety standards, or that the Ford and similar vehicles are reasonably safe family passenger vehicles, were false, incomplete, or misleading at the time they were made.

52. Defendants Ford, TRW Automotive, TRW Systems or some of them breached their express warranties in the sale of the Explorer and its components, including the type of seat belt buckle with which it was equipped, that the vehicle met all safety standards.

53. Through the sale of Ford vehicles and their components, including the Explorer and the occupant restraint system, including seat belt buckles, with which it was equipped, Defendants Ford, TRW Automotive, TRW Systems or some of them was a "seller" of the occupant restraint system, including the seat belt buckles with which the Explorer was equipped, pursuant to the GUCC, O.C.G.A. § 11-2-314, under which a warranty that the Explorer and the seat belt buckles with which it was equipped, were merchantable is implied in the sale of the Explorer and its components.

54. Defendants Ford, TRW Automotive, TRW Systems or some of them breached the implied warranty of merchantability in the sale of Ford vehicles, including the Explorer, equipped with seat belt buckles of the same or a similar type as the seat belt

buckles with which the Explorer was equipped, as these vehicles were rendered unfit for their ordinary purposes due to their inadequate and defective seat belt buckles, and the vehicle did not conform to the affirmations of fact that the vehicle met all safety standards.

55. Through the sale of Ford vehicles and their components, including the Explorer and the type of seat belt buckle with which it was equipped, Ford, TRW Automotive, and TRW Systems was each a "seller" of the type of seat belt buckles with which the Explorer was equipped pursuant to the GUCC, O.C.G.A. § 11-2-315.

56. At the time the vehicles were sold, Ford, TRW Automotive, and TRW Systems, and each of them, had reason to know that the seat belt buckles sold with Ford vehicles equipped with the type of seat belt buckle with which the Explorer was equipped were required to minimize the possibility of accidental release and buyers of such vehicles, including the Decedent, were relying on the skill or judgment Ford, TRW Automotive, and TRW Systems to select or furnish suitable seat belt buckles.

57. Pursuant to the GUCC, O.C.G.A. § 11-2-315, a warranty that seat belt buckles of the type that the Explorer was equipped with were fit for the particular use of minimizing the possibility of accidental release is implied in the sale of the vehicles, including the Explorer.

58. Ford, TRW Automotive, and TRW Systems, and each of them, breached the implied warranty of fitness for a particular use in that the type of seat belt buckles with which the Explorer was equipped are unreasonably dangerous, unfit, defective, and unsafe, and they do not minimize the possibility of accidental release.

59. Contrary to Ford's purported image of quality and safety, seat belt buckles of the type with which the Explorer was equipped, including the seat belt buckles with which the Explorer was equipped are unreasonably subject to accidental release at any time, and especially in the event of a collision. This latent defect totally defeats the purpose of the seat belt assembly, and as a result of this defect, the Explorer and its occupant restraint system are not reasonably crashworthy.

60. Ford failed to equip the Explorer with an occupant restraint system that was commercially available, technologically feasible, economically feasible, and which would provide reasonable protection against accidental release of the seatbelt buckle.

61. Ford vehicles, including the Explorer, that are equipped with seat belt buckles of the type that the Explorer was equipped, are not reasonably crashworthy because such seat belt buckles are unreasonably subject to accidental release at any time, especially in the event of the occurrence of foreseeable collisions.

62. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was defective.

63. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped are defective.

64. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was unsafe.

65. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped are unsafe.

66. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was not merchantable.

67. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped are not merchantable.

68. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was not reasonably suited to the use intended.

69. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped are not reasonably suited to the use intended.

70. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was not reasonably fit for the particular purpose for which they are sold.

71. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped are not reasonably fit for the particular purpose for which they are sold.

72. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer was unreasonably dangerous to foreseeable users and occupants.

73. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with

which the Explorer was equipped are unreasonably dangerous to foreseeable users and occupants.

74. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, the Explorer did not live up to reasonable consumer expectations, including the expectations of the Decedent.

75. As designed, inspected, tested, manufactured, assembled, equipped, marketed, distributed and sold, vehicles equipped with the type of seat belt buckle with which the Explorer was equipped do not live up to reasonable consumer expectations.

76. The seat belt buckles of the type with which the Explorer was equipped are defective as designed in that the design does not minimize the possibility of accidental release. The unreasonably dangerous, unfit, defective, and unsafe nature of the said seat belt buckles is evidenced by the fact that the design does not meet widely accepted standards for minimizing the possibility of accidental release. By way of example, and without limitation: (1) the design does not meet the risk-utility balancing test; (2) the design does not meet industry standard; (3) the design does not meet Ford Motors Corporation's design goal for minimizing the possibility of accidental release; (4) the design does not meet General Motors Corporation's design goal for minimizing the possibility of accidental release; (5) the design does not meet DaimlerChrysler's design goal for minimizing the possibility of accidental release; (6) the design does not meet the goal for minimizing the possibility of accidental release which is widely-accepted in Europe; (8) the seat belt buckles with which the Explorer was equipped does not meet Ford's own specification for said seat belt buckles; and (9) the design does not meet the United States government's safety standards for safety belt buckles, as specified at 49

C.F.R. § 571.209 S4.1(e), which requires seat belt buckles "be designed to minimize the possibility of accidental release."

77. The seat belt buckles with which the Explorer was equipped are subject to accidental release and do not minimize the possibility of accidental release.

78. Said defective seat belt buckles leave Ford vehicle occupants without the benefit of a seat belt assembly designed to minimize the possibility of accidental release, which is a primary component of their vehicle's safety system.

79. Ford, TRW Automotive, and TRW Systems and each of them, knew of this defect, or should have known of it, prior to the sale of affected vehicles, including the Explorer, to the public. Ford, TRW Automotive, and TRW Systems failed to disclose this defect to potential or actual purchasers and lessees of affected vehicles, including the Decedent.

80. Ford, TRW Automotive, and TRW Systems, and each of them, knew of this defect, or should have known of it, prior to the incident giving rise to this lawsuit. Ford, TRW Automotive, and TRW Systems failed to disclose this defect to potential or actual purchasers and lessees of affected vehicles, including the Decedent.

81. Ford, TRW Automotive, and TRW Systems, and each of them, created the false impression among buyers of vehicles similar to the Explorer that such vehicles were safe passenger vehicles intended to be used primarily for personal transportation, when Ford, TRW Automotive, and TRW Systems knew, or should have known, that the such vehicles, including the Explorer did not comply with the FMVSS applicable to passenger vehicles.

82. Ford, TRW Automotive, and TRW Systems failed to conduct proper and necessary safety inspections and tests of the vehicles manufactured and sold with seat belt buckles of the type that the Explorer was equipped with, including the Explorer.

83. Ford, TRW Automotive, and TRW Systems knowingly and willfully deceived the consuming public, including Decedent, by misrepresenting, actually or constructively, the nature, completeness, and results of any safety testing of the vehicles manufactured and sold with seat belt buckles of the type that the Explorer was equipped with, including the Explorer.

84. Ford, TRW Automotive, and TRW Systems knowingly and willfully deceived the consuming public, including the Decedent, by misrepresenting, actually or constructively, that they performed the requisite safety testing, or had performed the engineering inquiries necessary, to ascertain that they could in good faith certify to NHTSA and the public that the vehicles manufactured and sold with seat belt buckles of the type that the Explorer was equipped with, including the Explorer, met the requirements of the FMVSS.

85. Ford, TRW Automotive, and TRW Systems knowingly and willfully deceived the consuming public, including the Decedent, by misrepresenting, actually or constructively, the safety and fitness of the vehicles manufactured and sold with seat belt buckles of the type that the Explorer was equipped with, including the Explorer, for use as a passenger vehicle.

86. Ford, TRW Automotive, and TRW Systems had specific knowledge that the seat belt buckles of the type that the Explorer was equipped with, are defective as designed prior to manufacturing the Explorer, but they willfully, wantonly, recklessly or

negligently equipped the Explorer with said seat belt buckles, or allowed the Explorer to be so equipped.

87. Ford, TRW Automotive, and TRW Systems had specific knowledge that the seat belt buckles of the type that the Explorer was equipped with are defective as designed prior to the incident of March 14, 2002 giving rise to this lawsuit, but they willfully, wantonly, recklessly or negligently failed to recall the Explorer or other vehicles equipped with said seat belt buckles, failed to repair the defects, or failed to warn or notify the Decedent of such defects.

88. The Decedent was properly wearing the Explorer's seat belt immediately prior to the beginning of the incident giving rise to this lawsuit.

89. The defective, unsafe, and uncrashworthy seat belt buckle with which the Explorer was equipped caused the Decedent's seat belt to unlatch accidentally during the Incident.

90. As a proximate result of the defective, unsafe, and uncrashworthy seat belt with which the Explorer was equipped, Decedent suffered serious and fatal personal injuries, pain and suffering, mental anguish, and she incurred medical and funeral expenses.

91. The wrongful acts and omissions of Ford, TRW Automotive, and TRW Systems showed willful misconduct, malice, fraud, wantonness, oppression and that entire want of care which would raise the presumption of conscious indifference to consequences and the rights and safety of others. Punitive damages should be imposed in an amount sufficient to keep such wrongful conduct from being repeated.

## CONDITIONS PRECEDENT

92. All conditions precedent to the bringing of this action and Plaintiffs' right to the relief sought herein have occurred, have been performed, or have been excused.

93. This action is commenced not more than ten years from the date of the first sale for use or consumption of the Explorer and its components, including the seat belt buckles with which it was equipped.

## COUNT 1
## WRONGFUL DEATH

94. Paragraphs 1 through 92 are incorporated by reference.

95. By reason of the foregoing, Defendants are jointly and severally liable for the wrongful death of Decedent. Plaintiffs David E. Swanson, Julia K. Strickland, Darryl R. Swanson, and Douglas Swanson, in their individual capacities, are entitled to recover damages for the full value of the life of the Decedent, to herself, without deduction for expenses had she lived.

WHEREFORE, Plaintiffs demand trial by jury and judgment against Defendants Ford, TRW Automotive, and TRW Systems, jointly and severally, for such sums as compensatory damages as the evidence shows the Plaintiffs are justly entitled to recover, together with interest and attorney's fees, if applicable, and all costs of this action.

## COUNT 2
## PERSONAL INJURY

96. Paragraphs 1 through 92 are incorporated by reference.

97. By reason of the foregoing, Defendants are jointly and severally liable to Plaintiff David E. Swanson, in his representative capacity, for the personal injuries, pain and suffering, and medical and funeral expenses they caused Decedent.

98.  The wrongful acts of the Defendants showed willful misconduct, malice, fraud, wantonness, oppression and that entire want of care, which would raise the presumption of conscious indifference to consequences and the rights of others. Punitive damages should be imposed in an amount sufficient to keep such wrongful conduct from being repeated.

WHEREFORE, Plaintiff David Swanson, as the Decedent's Personal Representative, demands trial by jury and judgment against Defendants Ford, TRW Automotive, and TRW Systems, jointly and severally, for such sums as compensatory damages as the evidence shows the Decedent's estate is justly entitled to recover, together with interest if applicable, and all costs of this action. Plaintiff further demands judgment against Ford, TRW Automotive, and TRW Systems, and each of them, for punitive damages in whatever amount the jury deems appropriate and just.

Attorneys for Plaintiffs:

BOONE & STONE

By: /s/ William S. Stone
William S. Stone
Georgia State Bar No. 684636
K. Todd Butler
Georgia State Bar No. 099730

P. O. Drawer 70
Blakely, Georgia 39823
TEL   229/723-3045
FAX   229/723-4834

David Wm. Boone
Georgia State Bar No. 067730
Simone R. Siex
Georgia State Bar No. 645858

3166 Mathieson Drive
Atlanta, Georgia  30305
TEL   404/239-0305
FAX   404/239-0520